UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MU TECH, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>CATHERINE CHAN KOK YIN,<br>THOMAS LESS CHEUK WAI,<br>MAJESTIC PLAN INVESTMENTS<br>LIMITED, BELTON TECHNOLOGY,<br>INC., AND DOES 1 THRU 50,<br><br>        Defendants. | Case No.: 3:24-cv-01976-JAH-VET<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>**[ECF No. 6]** |

Pending before the Court is Plaintiff Mu Tech's ("Plaintiff" or "Mu Tech") motion for a preliminary injunction to prevent Defendants Catherine Yin, Thomas Lee, Majestic Plan Investments, and Belton Technology Inc. ("Defendants") from the unauthorized use of Plaintiff's trade secrets and from interference with Plaintiff's contracts. ECF No. 6 ("Motion" or "Mot."). For the foregoing reasons, the Court HEREBY GRANTS Plaintiff's motion.

///

# BACKGROUND

## A. Factual Background

On October 23, 2024, Plaintiff filed its complaint against Defendant Belton Technology Inc., a company incorporated in California, Defendant Majestic Plan Investments, and individual Defendants Catherine Yin and Thomas Lee for claims of trade secret misappropriation, breaches of fiduciary duty and self-dealing, breach of contract, and tortious interference with prospective business interests. ECF No. 1 ("Complaint" or "Compl."). Plaintiff alleges that Defendants worked in concert to harm Plaintiff and Asia Top Loyalty ("ATL"), a company which has exclusively assigned its intellectual property rights and litigation rights in the United States to Plaintiff. *Id.* at ¶¶ 10-14.[1] ATL and its assignee in North America, Mu Tech, operate in the loyalty rewards and e-commerce field, providing customers with benefits and promotional discounts based on their commercial transactions. *Id.* at ¶¶ 5, 10.

Plaintiff claims that Defendants Belton Technology Inc., Majestic Plans Investment, Catherine Yin, and Thomas Lee have conspired together to prevent Plaintiff from deploying ATL's proprietary rewards program in the North American market. *Id.* at ¶ 54. Plaintiff claims that the above Defendants have exercised control over Plaintiff's intellectual property, obtained during Defendants Yin and Lee's tenure on the ATL board, to support a new company, "Asia Top Loyalty Alliance," with Defendant Lee serving as the purported CEO of the new company. *Id.* at ¶¶ 13-15, 51. Plaintiff alleges, in essence, that Defendants have sought to strip ATL of its intellectual property and customers in order to force ATL into bankruptcy, so that Belton may absorb ATL and its intellectual property. Specifically, Plaintiff states that Defendants formed the second company, "Asia Top Loyalty Alliance," in order to generate confusion for ATL's existing clients to prevent ATL from completing its initial public offering in the United States. *Id.* at ¶¶ 13-19; *Id.* at ¶¶

---

[1] Unless otherwise stated, page numbers referenced herein refer to page numbers generated by the CM/ECF system.

21-24; *Id.* at ¶¶ 47-49.  Plaintiff, as the purported assignee of all litigation rights for ATL, alleges that this conduct is in express violation of terms of the Guarantee Agreement, signed by Andy Chen, the CEO of ATL, and Defendants Yin, Lee, and Majestic Plan Investments, which bars parties from utilizing the name and likeness of "Asia Top Loyalty" in other products.  *See* Guarantee Agreement, Ex. A (Compl. at 13, 16).  Plaintiff alleges it has lost clients as a result of Defendants' conduct, and that its efforts to support ATL's initial public filing plan have been significantly frustrated by the actions of the Defendants. Compl. at ¶¶ 22-23, 26-27.

**B. Procedural Background**

On December 9, 2024, Plaintiff filed a motion for a temporary restraining order and preliminary injunction.  ECF No. 6.  On December 13, 2024, the Court denied the motion for a temporary restraining order and set a briefing schedule for Plaintiff's motion for preliminary injunction.  ECF No. 7.  On January 2, 2025, Defendant Belton Technology Inc. filed its brief in opposition to Plaintiff's motion for preliminary injunction.  ECF No. 14 ("Opposition" or "Opp.").  On January 7, 2025, Plaintiff filed its reply.  ECF No. 15 ("Reply").  The Court heard oral arguments on Plaintiff's motion on January 22, 2025. ECF No. 20.

## DISCUSSION

Plaintiff currently seeks a preliminary injunction enjoining Defendants Belton Technology Inc., Majestic Plans Investment, Catherine Yin, and Thomas Lee from using ATL's name and business model without authorization; from utilizing ATL's intellectual property; and from engaging in breach of the Guarantee Agreement.  Mot. at 6.  Plaintiff raises claims in the complaint under (1) the Defense of Trade Secrets Act, 18 U.S.C. § 1836 et seq. against all named Defendants; (2) breach of fiduciary duty against Defendants Catherine Yin and Thomas Lee; (3) self-dealing claims against Defendants Catherine Yin and Thomas Lee; (4) breach of contract against Defendants Catherine Yin, Thomas Lee, and Majestic Plans Investment; and (5) tortious interference with prospective business interests against all named Defendants.  The Court will first evaluate its authority to issue

injunctive relief while arbitration is pending before reaching the merits of Plaintiff's motion.

### A. Injunctive Relief Pending Arbitration

"[A] district court may issue interim injunctive relief on arbitrable claims if interim relief is necessary to preserve the status quo and the meaningfulness of the arbitration process—provided, of course, that the requirements for granting injunctive relief are otherwise satisfied." *Toyo Tire Holdings of Am. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 981 (9th Cir. 2010). "[J]udicial interim relief may be necessary to preserve the meaningfulness of the arbitral process" because "if [a party] loses its customers before interim relief is possible, any subsequent relief could be useless." *Id.* at 980-981. If the district court is satisfied after studying the underlying arbitration provision that injunctive relief is not barred by the terms of the contract's arbitration clause, the court may issue such relief if the requirements of an injunction are met. *Id.* Without injunctive relief during the lengthy course of arbitration–limited to preserving the status quo between the parties pending an adjudication in arbitration–any value or assets that a party has been trying to protect can be completely lost during the course of arbitration and before a final resolution of the matter on the merits has been reached. *Id.* The Ninth Circuit's decision in *Toyo Tire Holdings* "is consistent with… the holdings of a majority of our sister circuits." *Id.* at 981-82.

Here, Defendants signed the Guarantee Agreement and agreed that disputes or controversies arising under the Agreement shall be settled by the Hong Kong International Arbitration Centre "under its prevailing arbitration rules." *See* Guarantee Agreement § 7.3 ("Arbitration"), Ex. A, Compl. at 16. Under the prevailing rules of the Arbitration Centre, the 2024 Hong Kong International Arbitration Centre Rules expressly state that a "request for interim measures addressed by any party to a competent authority *shall not be deemed incompatible* with the arbitration agreement." 2024 Hong Kong International Arbitration Centre Administered Arbitration Centre Rules, Article 23.9 ("Interim Measures of Protection and Emergency Relief") (emphasis added). A review of the Guarantee

Agreement demonstrates that there is no additional clause limiting interim relief solely to the Hong Kong International Arbitration Centre.  The arbitration clause simply states that the parties agree to the Hong Kong International Arbitration Centre's prevailing rules.  *See* Guarantee Agreement § 7.3, Ex. A, Compl. at 16.  Because the Guarantee Agreement allows the parties to seek interim relief from other judicial authorities, as allowed by Article 23.9 of the Hong Kong International Arbitration Centre, this Court retains the authority to issue interim relief as the matter proceeds in arbitration.  *See also Toyo Tire Holdings*, 609 F.3d at 983 (finding that even if the arbitration tribunal has been impaneled, a district court may still issue interim relief if allowed by the underlying contract and prevailing rules). The arbitration panel that will decide the case may review the interim relief provided by a district court as the matter proceeds in arbitration.  *Id.* at 983.

**B. Legal Standard**

A party seeking a preliminary injunction must establish: (1) a likelihood of success on the merits; (2) irreparable injury that is likely to result in the absence of relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  When a party demonstrates a "fair chance of success on the merits" and that "the balance of harm tips decidedly" towards the party, a district court may enter a preliminary injunction in the party's favor upon a showing of the remaining *Winter* factors.  *Benda v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Workers*, 584 F.2d 308, 314-15 (9th Cir. 1978).  Injunctive relief may also be had when the movant presents "serious questions" that require litigation for their resolution and when the balance of harm tilts clearly towards the movant.  *Id.* at 314-15.  *See also All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-1135 (9th Cir. 2011) (finding that the majority opinion in *Winter* did not displace the Ninth Circuit's "serious questions" approach).  A district court may consider hearsay and even inadmissible evidence in deciding whether to issue a preliminary injunction for the purpose of preventing irreparable harm, so long as sufficient facts are alleged by the movant.  *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) (citations omitted).

**C. Analysis**

   **a. Plaintiff's Trade Secrets Claim**

   Plaintiff alleges that Defendants are liable under the federal Defense of Trade Secrets Act, 18 U.S.C. § 1836 et seq., because they obtained Plaintiff's trade secrets through their roles as board members of ATL and subsequently launched "Asia Top Loyalty Alliance" to compete for ATL's customers and investors. To plead a trade secrets claim under the Defense of Trade Secrets Act, Plaintiff must show: "(1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657-58 (9th Cir. 2020).

   **i. Possession of a Trade Secret**

   Plaintiff alleges that the trade secrets it possesses include confidential information related to "ATL's loyalty points exchange and proprietary system for eCommerce, pay-with-points, co-brand Mastercard and buy-now, pay-later system." Compl. at ¶ 10.[2] As explained in an attachment to the complaint, ATL's system is based on a software program that connects businesses to individuals and allows businesses to design and launch promotional campaigns, including discounts on goods and services, to consumers. *Id.*, Ex. F at 30-33. The ATL software may also be used by banks, financial institutions, and companies that provide card-processing services in order to connect their consumers and clients with the discounts provided by participating businesses. *Id.* The software includes the ability for businesses and financial institutions to set an agreed-upon internal price for a discounted good or service and a slightly higher, consumer-oriented price for the same

---

[2] Plaintiff is the exclusive licensee of all intellectual property rights of ATL in the United States and can bring suit for alleged trade secret misappropriation by Defendant Belton Technology. Compl. at ¶ 10, *and see* License Agreement, Ex. G (Compl. at 41) ("Licensor agrees to grant to Licensee…an exclusive license under the Patents, Technical Information and Trademarks.").

3:24-cv-01976-JAH-VET

good or service, and the software allows for participating financial institutions and ATL to share in the profit margin between the two prices. *Id*.

Plaintiff alleges that ATL's program was confidential and accessible to Defendants only through their directorships as board members of ATL, which they used to access and disclose the software program in furtherance of their efforts to launch the competitor "Asia Top Loyalty Alliance." Compl. at ¶¶ 13-15, 23. Plaintiff alleges that the software program is central to ATL's business model and a source of economic value. *Id.* at ¶ 13. Plaintiff also alleges that its trade secrets extend to client lists, which have been allegedly accessed by Defendant Lee to sign contracts without ATL or Plaintiff's approval. Compl. at ¶¶ 26-27.

Plaintiff claims that after ATL board members Catherine Yin and Thomas Lee became disgruntled by ATL's financial performance, they began to transfer ATL's intellectual property and client lists to other entities, including Belton Technology Inc. and "Asia Top Loyalty Alliance", a competitor entirely fronted by Defendants Catherine Yin and Thomas Lee. *Id.* at ¶¶ 17, 22-24, 26-28. Plaintiff alleges that all named Defendants worked together to "setup and operate ATLA…to illegally steal and misappropriate ATL IP's and client lists from ATL, and to directly and illegally compete with ATL…[given that] ATLA has illegally: (a) solicited ATL's clients, (b) stolen trade secrets from ATL, (c) disclosed ATL's intellectual properties; and (d) caused significant and serious confusion in the global….market places of the Plaintiff." *Id.* at ¶ 14.

Defendant Belton Technology Inc. argues as its main and only argument under the Defense of Trade Secrets Act that Plaintiff's claimed trade secrets are too general and vague to support a claim under the federal statute. Opp. at 11. Defendant Belton argues that the purported trade secrets are presented at a level of generality that prevents the Defendant from effective notice of the boundaries of the alleged trade secret. *Id*.

The purpose of pleading trade secrets with specificity is to provide the defendant with "concrete identification" of the trade secret so that the defendant may prepare a rebuttal. *InteliClear*, 978 F.3d at 658. In *InteliClear*, the court found that, at a point "where

no discovery whatsoever had occurred," plaintiff had pled its trade secrets claim with sufficient particularity when it had described specific features and tables of the InteliClear system as trade secrets. *Id.* at 658-59. In ruling for the plaintiff, the court found that, instead of providing an entire database to the court and requesting that the judge do the sifting, the plaintiff had clearly pointed to at least one trade secret with sufficient particularity. *Id.* at 659-60. The court also found that a plaintiff may plead a trade secret in broader terms early in the proceedings and be allowed to proceed to discovery, with the terms of the trade secret to be further refined and narrowed through the discovery process. *Id.* at 662.

The court explained that "[f]ederal cases analyzing whether a plaintiff's trade secrets are described with 'sufficient particularity' typically arise in the battleground of discovery. In such cases, discovery provides an iterative process where requests between parties lead to a refined and sufficiently particularized trade secret identification." *Id.* (citations omitted). When a party claiming a trade secret fails to narrow the definition of its trade secret during the course of discovery, and when a party "does not *clearly refer* to tangible trade secret material," the party has failed to achieve the level of specificity necessary to continue prosecution of its trade secrets claim. *See also Imax Corp. v. Cinema Technologies, Inc.* 152 F.3d 1161, 1165-67 (finding that the claimant had on multiple times failed to provide the specific dimensions of its purported trade secret despite discovery requests, and that a competitor in the projector business could not be expected to prepare its rebuttal to a trade secrets claim on general references to the "dimensions and tolerances" of the claimant's projector system).

At this stage, the Court finds that Plaintiff has pled its trade secrets claim under the Defense of Trade Secrets Act with sufficient particularity and has provided Defendant Belton Technology Inc. with "concrete identification" of its claimed trade secret, namely the loyalty rewards system developed by ATL and replicated in full, as alleged, by "Asia Top Loyalty Alliance." *See InteliClear*, 978 F.3d at 658. Plaintiff has provided Defendant Belton Technology Inc. and other Defendants with sufficient information "to ascertain at

least the boundaries within which the secret lies" and at most, the relevant consumer platform for loyalty points rewards that is at the heart of Plaintiff's claimed proprietary material.  *See Alta Devices, Inc. v. LG Elec., Inc.*, 343 F. Supp. 3d 868, 880-882 (N.D. Cal. 2018) (finding that claimant had provided both the court and opposing party with notice of the boundaries of the trade secret, and that even if the claims resembled "broad categories of trade secret information," they were specific enough to survive a motion to dismiss).

Plaintiff has demonstrated a likelihood of success on its possession of a trade secret. *See Alta Devices*, 343 F. Supp. 3d at 882 (finding no heightened pleading requirement for trade secrets claims and that the plaintiff was not required to publicly disclose in the complaint the very information it was seeking to protect).  Because Plaintiff claims that all named Defendants, including Defendant Belton Technology Inc., worked in concert to graft the *entirety* of the ATL consumer platform into the alleged rival "Asia Top Loyalty Alliance" platform, Defendant Belton Technology Inc. has requisite notice of the specific subject matter being claimed by Plaintiff to prepare its rebuttal.  *See* Compl. at ¶¶13-15; *see also Cisco Systems, Inc. v. Chung*, 462 F. Supp. 3d 1024, 1049-1050 (stating that the test of whether a trade secret satisfies the particularity requirement is not whether the trade secret is spelled out in detail, but whether the claimant has provided sufficient information for the opponent to ascertain the boundaries within which the secret resides).

Furthermore, under the standard for a preliminary injunction articulated in *Benda*, success for the movant may also be had when serious questions requiring litigation are alleged.  *See* 584 F.2d at 315.  Here, the Court finds that Plaintiff has identified the loyalty rewards program with sufficient specificity to create a serious question involving trade secrets misappropriation by Defendants Belton Technology Inc., Catherine Yin, Thomas Lee, and Majestic Plan Investments, and a triable issue of fact.  *See also InteliClear, LLC*, 978 F.3d at 659 (finding a genuine issue of material fact as to whether claimant had identified its trade secrets with sufficient particularity).

Finding that Plaintiff has demonstrated a fair chance of success on its possession of a trade secret, the Court turns to analyzing the likelihood of success on the remainder of

the misappropriation analysis: whether the Defendant misappropriated the trade secret, and whether the misappropriation caused or threatened damage to the Plaintiff. *See InteliClear*, 978 F.3d at 657-58.

### ii. Misappropriation of the Trade Secret

Misappropriation of trade secrets under the Defense of Trade Secrets Act requires either "(A) acquisition of a trade secret by another person who knows or has reason to know that the trade secret was acquired by improper means" or "(B) disclosure or use of a trade secret of another without express or implied consent" by a person who used improper means to acquire knowledge of the trade secret, or who knew or had reason to know that knowledge of the trade secret was derived through improper means, acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from a person who owed a duty to another to maintain the secrecy of the trade secret. 18 U.S.C. § 1839(5).

Plaintiff alleges, and Defendant Belton Technology Inc. has not disputed, that:

(1) Thomas Lee worked as an employee of Belton while serving on the board of ATL (Reply at 11, Ex. A at ¶ 5) and that Lee transferred ATL's software to Belton (Compl. at ¶ 24) (alleging that Defendant Lee "has also been working for Belton without the consent of the ATL Board and stealing ATL IPs to develop Belton's market"), (Reply at 12, Ex. A at ¶¶ 9-10);

(2) On two instances Thomas Lee sought to sell ATL's platform to competitors without authorization and re-routed ATL's proceeds to his personal accounts (Reply at 12, Ex. A at ¶¶ 9-10);

(3) Catherine Yin serves as a board member of Belton while also serving as a board member of ATL (Reply at 11, Ex. A at ¶¶ 3-4)[3];

---

[3] Defendant Yin serves as one of two board members of the California company, Defendant Belton Technology Inc.

(4) Catherine Yin and Thomas Lee disclosed ATL's intellectual property and confidential information without ATL's authorization in order to benefit Belton (Compl. at ¶¶ 23-25); and

(5) Acting as agents of Belton, Defendants Yin and Lee initiated arbitration against ATL through Defendant Yin's corporation, Defendant Majestic Plan Investments,[4] to force ATL to buy back a magnitude of shares that will, as alleged, force ATL into bankruptcy and susceptible to a takeover by Belton, the alternate company to which both Yin and Lee are strongly connected (Compl. at ¶¶ 23-25, ¶¶ 34-35).

Based on the facts as alleged, Plaintiff has met its burden of proving a likelihood of success on its claim that Defendants Belton Technology Inc., Catherine Yin, and Thomas Lee misappropriated Plaintiff's trade secrets under 18 U.S.C. § 1839(5), while Defendants Catherine Yin and Thomas Lee worked as employees, agents, or assignees of Belton. *See also Alta Devices, Inc.,* 343 F. Supp. 3d at 882. As alleged, the broader intent by all Defendants was to prevent the launch of Plaintiff and ATL's consumer rewards software program in the United States and to place ATL in financial distress so that it may become a subsidiary of Belton. Compl. at ¶¶ 23-25.

"Under the doctrine of respondeat superior, an employer is vicariously liable for the torts of its employees committed within the scope of [their] employment." *Cisco Systems*, 462 F. Supp. 3d at 1056. Liability extends to intentional torts as well, even if the employer has not authorized the employees to perform the tortious activity, when the conduct occurs within the scope of the individuals' employment and when the conduct serves, at least in part, to benefit their employer–even if "the employer may forbid it." *See id.* at 1056-57. Given that Plaintiff alleges that both Defendants Yin and Lee worked as employees and/or board members of Defendant Belton Technology Inc., Plaintiff has sufficiently pled, in light of the factual allegations detailed above, that its trade secrets were misappropriated

---

[4] Defendant Yin is alleged to be the sole shareholder and director of Defendant Majestic Plan Investments. ECF No. 12-2 at 4.

3:24-cv-01976-JAH-VET

by Defendant Belton Technology Inc. under a theory of vicarious liability. *See Cisco Systems*, 462 F. Supp. 3d at 1056-57 (finding that a company is properly held liable under vicarious liability for misappropriating trade secrets allegedly taken by one of its employees when that employee utilized trade secrets for the company's benefit).

Plaintiff has also alleged that Defendant Belton Technology Inc. worked together with the other named defendants to launch the look-alike company for the purpose of harming ATL's market position and preventing it from deploying its technology with the Plaintiff in the United States.  Compl. at ¶ 31, ¶¶ 41-43, ¶ 47, ¶ 51.  Especially since discovery has not yet commenced, Plaintiff has alleged sufficient facts to support its claim for trade secrets misappropriation. *See Alta Devices, Inc.*, 343 F. Supp. 3d at 883 (finding that it is unreasonable to require plaintiff to demonstrate the precise ways in which defendants utilized misappropriated trade secrets at an early stage in the proceedings, since those defendants "are the only ones who possess such information.").

### iii.  Damage Caused by Trade Secret Misappropriation

Under the final element of a trade secrets claim, the claimant must prove harm or damage connected with the trade secret misappropriation. *See InteliClear,* 978 F.3d at 658. Here, Plaintiff points to two sources of harm connected with the unauthorized disclosures. Plaintiff alleges that Orix Asia Limited has brought a lawsuit against the Plaintiff and ATL for breaches of contract in light of the disclosures made by Defendants Yin and Lee, as such disclosures violated the terms of an agreement between ATL and Orix.  Compl. at ¶ 31. Plaintiff also alleges, based on a declaration submitted by the CEO of ATL, that Plaintiff and ATL have lost significant investments as a result of the misappropriation of its trade secrets, to the extent that eight investors have declined to invest in ATL due to the presence of a competitor on the market with the same technology and similar name.  Reply at 6, Ex. A at ¶ 7.  Plaintiff has identified tangible harm connected to the unauthorized disclosure of its trade secrets, and the costs of litigation or loss of market position are clearly cognizable harms. *See e.g. Lamb-Weston, Inc. v. McCain Foods., Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991) (finding that the harm in loss of market position, even without the

movant quantifying its loss, is sufficient to support a preliminary injunction in a trade secrets case), *and see WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 853-54 (N.D. Cal. 2019) (same).  As a result, Plaintiff has demonstrated a likelihood of success on all three elements of its trade secrets claim under 18 U.S.C. § 1839 of the Defense of Trade Secrets Act.

### iv.  Remainder of *Winter* Factors

Having found that Plaintiff has a likelihood of success on its claim of trade secrets misappropriation, the Court proceeds to the remainder of the preliminary injunction analysis.  *See Winter*, 555 U.S. at 20.  Under the irreparable harm prong, the movant must demonstrate that irreparable harm is likely to occur absent injunctive relief.  *Id.*

In the trade secrets context, courts have found the movant successful on demonstrating irreparable harm based on the movant's showing of market harm alone.  *See WeRide Corp.*, 379 F. Supp. 3d at 853-54 (finding that "[i]t is well established that the loss of market position and the disclosure of trade secrets can constitute irreparable harm," and finding that movant sufficiently pled that it was "likely to have its market position set back.") (citations omitted).  *See also Lamb-Weston, Inc.*, 941 F.2d at 974 (finding as sufficient movant's claim that it will be "irreparably harmed" by being pushed out of new markets in foreign countries, even when its entry into those markets was nascent, and concluding that the loss of market position faced by a movant in the absence of a preliminary injunction constituted irreparable harm in the trade secrets context).  Furthermore, the loss of a trade secret to competitors on its own can constitute irreparable harm, because once such secrets are lost, they are gone forever.  *See WeRide Corp.*, 379 F. Supp. 3d at 853.

In addition, Plaintiff has alleged a significant level of harm done to its business model by Defendants.  Plaintiff has included factual allegations that eight investors have sought to invest in Plaintiff's intellectual property but declined to do so after their due diligence revealed the presence of a competitor, "Asia Top Loyalty Alliance," an outcome that has left Plaintiff and ATL without the ability to raise capital.  Reply at 6, 12, Ex. A at 7.

3:24-cv-01976-JAH-VET

Alongside an inability to raise funds because of disruption caused by "Asia Top Loyalty Alliance," Plaintiff has alleged that it has lost a valuable client and must defend against a costly enforcement lawsuit involving the client as a result of the Defendants' conduct. Compl. at ¶ 31. Plaintiff further alleges that the buy-back plan operated by the named Defendants who fronted the "Asia Top Loyalty Alliance" competitor will lead to ATL's bankruptcy and the dissolution of Plaintiff's intellectual property rights under its license with ATL. Compl. at ¶ 35 (alleging that "ATL does not have sufficient liquid assets to buy back the 52 million shares, and this reduction of capital would lead to the bankruptcy of ATL[.]"). Finally, Plaintiff states that ATL's contractual obligation to go public on a reputable stock exchange, under Article 4.1 of the Guarantee Agreement, is being frustrated by competition presented by "Asia Top Loyalty Alliance," which will lead to ATL's forced breach of the Guarantee Agreement and the loss of Plaintiff's intellectual property rights when ATL is unable to buy-back Defendant Majestic Plan Investment's shares under the terms of the Agreement. Reply at 11-12, Ex. A at ¶¶ 6-8.

Because "[t]he threat of being driven out of business is sufficient to establish irreparable harm," the Court finds that Plaintiff has succeeded on presenting a reasonable apprehension of irreparable harm. *See Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985). Injunctive relief is also proper where the movant alleges facts that support a finding of a "[r]easonable apprehension of threatened injury." *See id.* at 1473; *see also Los Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d 1197, 1202-3 (9th Cir. 1980). Here, Plaintiff has pled sufficient facts relating to its reasonable apprehension of threatened injury, namely that ATL and its intellectual property will no longer belong to Plaintiff if the competitor remains on the market and if ATL is unable to comply with its public offering requirement under the Guarantee Agreement. Without the ability to retain ATL's trade secrets, which is the sole source of value for Plaintiff, Plaintiff is placed in reasonable apprehension of irreparable injury.

On the remaining *Winter* factors, Plaintiff also demonstrates success. The balance of equities tips clearly and heavily in Plaintiff's favor. Here, Plaintiff seeks a narrow and reasonable preliminary injunction: to prevent Defendants Belton Technology Inc., Catherine Yin, Thomas Lee, and Majestic Plan Investments from using Plaintiff's trade secrets without permission and to cease and desist from sponsoring the ATL look-alike company, "Asia Top Loyalty Alliance," and capturing ATL's clients. Because Defendant Belton Technology Inc. asserts that it has a business model centered on manufacturing involving plastic molding, *see* Opp. at 7, instead of software services or mobile applications oriented towards consumers, a preliminary injunction in Plaintiff's favor is unlikely to harm the Defendant. *See Warner Bros. Ent. Inc. v. WTV Sys., Inc.*, 824 F. Supp. 2d 1003, 1014-15 (finding that the balance of equities tips in favor of Plaintiff when Defendant has not pled tangible claims of harm associated with a preliminary injunction). Here, Defendant Belton Technology has not asserted <u>any</u> harm that would arise from the issuance of a preliminary injunction to protect Plaintiff's trade secrets. On the public interest analysis, the Court finds that the public interest is served by the issuance of a preliminary injunction to prevent intellectual property theft. *See Warner Bros.*, 824 F. Supp. 2d at 1015.

Having found that all elements of the *Winter* analysis are met, the Court enjoins Defendants from aiding, abetting, or otherwise supporting "Asia Top Loyalty Alliance," and enjoins the Defendants from any continued use of ATL's software and consumer platform. The Court also recognizes the broad authority it has to issue an injunction upon the Defendants, binding in this district and in foreign districts, especially when Plaintiff has alleged interference by Defendants in foreign markets. *See e.g. Lamb-Weston*, 941 F.2d at 974 (finding that "[a] worldwide injunction here is consistent with those goals because it 'place[s the defendant] in the position it would have occupied if the breach of confidence had not occurred prior to the public disclosure.'") (citation omitted). The Court also finds that Plaintiff has presented "serious questions" on its claim of trade secrets misappropriation that require litigation for the resolution of those questions, and that the

balance of harm has been shown to tilt clearly in Plaintiff's favor.  *See Benda*, 584 F.2d at 314-15, *and see Cottrell*, 632 F.3d at 1131-32.

### b.  Claims for Breach of Fiduciary Duty and Self-Dealing

Plaintiff next brings claims against named Defendants Catherine Yin and Thomas Lee for breach of fiduciary duty, self-dealing, and breach of contract law in connection with their role as board members of ATL and as guarantors who signed the Guarantee Agreement with Majestic Plan Investments.  Plaintiff Mu Tech has standing to pursue ATL's claims against Defendants Catherine Yin and Thomas Lee given ATL's assignment of litigation rights to Mu Tech.  Reply at 14, Ex. B.  *See Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1282-83 (9th Cir. 1983) (finding assignment of litigation rights sufficient to confer standing on a third party).  Given the Court's subject matter jurisdiction over Plaintiff's federal trade secrets claim, the Court may exert supplemental jurisdiction over Plaintiff's ancillary claims in its decision to grant injunctive relief.  28 U.S.C. § 1367.

Under Hong Kong law, the laws under which ATL has been incorporated (ECF No. 1 at 2), the core fiduciary duty of a company director is "to act in the company's bona fide interests, or in other words, to promote the success of the company."  *Teras Int'l Corp. v. Gimbel*, 2017 WL 3841869, *7 (S.D.N.Y. 2017) (citation omitted).  Plaintiff alleges that Defendant Yin, after learning about ATL's financial status through information available to her as a board member of ATL, directed Defendant Majestic Plan Investments to buy-back its shares of ATL under the Guarantee Agreement through the initiation of arbitration in the Hong Kong International Arbitration Centre.  Compl. at ¶ 35.[5]  Plaintiff has alleged sufficient facts demonstrating its likelihood of success on Defendant Yin's breach of her fiduciary duty to ATL based on her conduct and significant conflicts of interest, given her support of ATL's competitor "Asia Top Loyalty Alliance" and her initiation of litigation

---

[5] As noted earlier, Defendant Yin serves as the sole shareholder and director of Majestic Plan Investments. ECF No. 12-2 at 4.

against ATL under the Guarantee Agreement based on the confidential information she received through her position of trust within ATL.

The Court notes the remarkable intertwinement Defendant Yin has with Defendant Majestic Plan Investments, Defendant Belton Technology Inc., and ATL. Plaintiff has also presented facts that Defendant Thomas Lee, while serving as a board member of ATL, transferred ATL's intellectual property to his employer, Belton Technology Inc., and to the fraudulent company he founded, "Asia Top Loyalty Alliance." Compl. at ¶ 24. Plaintiff states that Defendant Lee has also fraudulently billed ATL for legal services, attempted to strong-arm ATL into a settlement with Defendants Yin and Majestic Plan Investments, and has been excused from the pending arbitration by Majestic Plan Investments given his cooperation with Defendant Yin's alleged efforts to undermine ATL. Compl. at ¶ 37. As claimed against Defendant Lee, Plaintiff also demonstrates a likelihood of success that Defendant Lee did not act "to promote the success" of ATL, but served to harm it in favor of Defendants Majestic Plan Investments and Belton Technology Inc. *See Teras Int'l Corp.*, 2017 WL at *7.

Plaintiff's claim against Defendants Yin and Lee for self-dealing also stand in conflict with their fiduciary duties. Hong Kong law recognizes multiple fiduciary duties owed by a corporate officer, including "a duty (1) to act for a proper purpose, (2) to avoid conflicts of interest, and (3) not to make a profit out of one's trust." *Id.* at *10 (citation omitted). Plaintiff has demonstrated a likelihood of success on the merits based on the facts alleged, specifically including but not limited to Defendants Yin and Lee working against their fiduciary duties to ATL while simultaneously maintaining overlapping and inconsistent allegiances with Belton and Majestic Plan Investments; misappropriating trade secrets and proprietary information from ATL; and creating and operating "Asia Top Loyalty Alliance" with the intent of defrauding ATL of its intellectual property and providing Majestic Plan Investments with the grounds for initiating arbitration against ATL for breach of the Guarantee Agreement, after ATL's failure to list on a reputable stock

exchange by December 31, 2023 as allegedly caused by the interference generated by Defendants.

Plaintiff has demonstrated irreparable harm from the Defendants' conduct which derives from Defendants' failure to observe and carry out their fiduciary obligations to ATL.  Plaintiff has also demonstrated that the balance of equities tips in its favor, as an injunction ordering Defendants to refrain from using ATL's confidential information, accessed during their time as board members, to ATL's detriment serves to promote the same obligations Defendants were bound to in the first instance.   Injunctive relief pertaining to the above claims places no more hardship upon Defendants than the obligations they were bound to when they made the decision to serve on ATL's board. Finally, there exists a strong public interest in ensuring board members uphold their duties of trust and loyalty to the company they have agreed to serve.  On the whole, Plaintiff has met the requirements for issuance of a preliminary injunction on its claims of breach of fiduciary duty and self-dealing.  The Court enjoins Defendants Catherine Yin and Thomas Lee from any continued breaches of their fiduciary duties and orders the Defendants to refrain from using any confidential information gained during their time as board members of ATL to ATL's commercial detriment.

### c.  Claims for Breach of Contract

Plaintiff next asserts that Defendants Yin and Lee are in breach of the Guarantee Agreement, which they signed with ATL's CEO, Andy Chen.[6]  Compl. at ¶¶ 45-49.  The Guarantee Agreement includes a non-compete clause in Article 6, which requires that no

---

[6] In addition to the Assignment of Litigation Rights, Plaintiff has standing to pursue breach of contract claims against Defendants, because it faces current litigation as a result of Defendants' breach.  Compl. at ¶ 31 (asserting that Orix Asia Limited has sued Plaintiff and ATL for breach of contract as a result of the unauthorized activities of "Asia Top Loyalty Alliance."). *See also Cummings v. Cenergy Int'l Services LLC*, 271 F. Supp. 3d 1182, 1190-91 (E.D. Cal. 2017) (finding that "[t]he threat of litigation is a cognizable injury sufficient to confer standing in a contract dispute, even where the threatened individual/entity is not a party to the challenged contract." (citations omitted)).

3:24-cv-01976-JAH-VET

Guarantor shall create an alternative or competitor to ATL. *See* Guarantee Agreement, Ex. A (Compl. at 15-16). Plaintiff argues that, upon signing the Guarantee Agreement, Defendants Yin, Lee and Majestic Plan Investments "never had any intention of honoring the Guarantee Agreement." Compl. at ¶ 49. As Plaintiff has alleged throughout its complaint and declarations in support of its Motion, Defendant Yin and Lee operated the "Asia Top Loyalty Alliance" competitor with the purpose of defrauding ATL of its intellectual property and providing Defendant Majestic Plan Investments with the grounds for initiation of arbitration against ATL for breach of the non-compete clause. Because Plaintiff presents a serious question for litigation on Defendants breach and fraud in connection with the Guarantee Agreement, including the Defendants' support of "Asia Top Loyalty Alliance" despite the agreement's non-compete clause, the Court finds a likelihood of success for the Plaintiff on its fourth cause of action for breach of contract. For the same reasons, Plaintiff has sufficiently pled its claim for irreparable harm, the balance of equities tipping in its favor, and the public interest favoring Plaintiff's position.

### d. Claims of Tortious Interference

Plaintiff also alleges tortious interference with prospective business interests against all defendants, including the California Defendant Belton Technology Inc. Compl. at ¶¶ 50-54. Applying California law, federal courts require that a plaintiff claiming tortious interference with prospective business interests plead: (1) a valid economic relationship between the Plaintiff and a third party containing the probability of future economic benefit to the Plaintiff, (2) Defendant's knowledge, construed or actual, of that relationship, (3) Defendant's intentional and wrongful conduct taken to disrupt the relationship, and (4) disruption of the Plaintiff's business relationship and resulting economic harm to the Plaintiff. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125-26 (9th Cir. 2014). Here, Plaintiff alleges under its claim for tortious interference of prospective business interests that Defendant Belton Technology Inc., along with the remaining Defendants, exercised control over Plaintiff's intellectual property as assigned by ATL, that Plaintiff had entered into a licensing agreement with ATL for the purpose of

developing a North American market for the ATL consumer platform on July 12, 2024, and that the named Defendants pursued arbitration with the specific intent of preventing ATL from developing its presence in the United States and from completing its initial public offering.

Defendant Belton Technology Inc. argues that Plaintiff has failed to allege with factual support that any of the named Defendants had the requisite knowledge of the licensing agreement between Plaintiff and ATL to state a claim under this tort. *See* Opp. at 16-17. Defendant Belton Technology Inc. argues that, even if the Defendant had this knowledge, the alleged interference in launching ATLA happened before ATL and Plaintiff entered into their licensing contract on July 12, 2024. *Id.*

First, the Court finds that Defendant Belton Technology Inc. maintained the requisite knowledge to be held liable under this tort. Because "construed" knowledge is sufficient, the Court finds that, based upon the record in this matter, Defendant Belton Technology Inc. knew or should have known about Plaintiff and ATL's economic relationship, given that its board member, Defendant Catherine Yin, also sat on the board of ATL. The circumstantial and direct evidence proffered by Plaintiff supports a finding that Plaintiff will likely have success on the merits of the second and third elements of this claim.

Second, Plaintiff has alleged that the wrongful conduct of "Asia Top Loyalty Alliance" and its website and social media presence was functional and active at all relevant times until it was removed from the internet by Defendants in an attempt to avoid liability after the instant litigation was initiated. Mot. at 3-5. As alleged, Defendants continued to maintain and support the competitor "Asia Top Loyalty Alliance" despite having knowledge of ATL's relationship with Plaintiff. In sum, Plaintiff has shown that the alleged wrongful conduct was ongoing and the sustained presence of "Asia Top Loyalty Alliance" on the market prevented multiple investors from investing in Plaintiff and ATL, leading to lawsuits and the loss of clients by Plaintiff and ATL. *See* Reply at 11-12, Ex. A, ¶¶ 6-8. Plaintiff has also demonstrated irreparable harm in connection with this conduct; the balance of the equities tips sharply in Plaintiff's favor because Defendants point to no

3:24-cv-01976-JAH-VET

harm they would face by the issuance of an injunction; and there is a strong public interest in restraining wrongful conduct aimed at harming business relationships between parties. As a result, Plaintiff has demonstrated that it has a likelihood of success on the merits of its claim of tortious interference with prospective business interests, or in the alternative, that serious questions meriting litigation exist on Plaintiff's claim for tortious interference with prospective business interests by Defendants.

Because the Federal Rules of Civil Procedure Rule 65(d)(2)(C) allows this Court to bind "other persons who are in active concert or participation with anyone" designated as a party in this action, the Court's injunction applies to Defendant Belton Technology Inc., as well as to Defendants Catherine Yin, Thomas Lee, and Majestic Plan Investments as "other persons" in active concert or participation with Defendant Belton Technology Inc.

For the foregoing reasons, the Court finds that Defendants have engineered a sophisticated web of misconduct upon Plaintiff and ATL that supports the granting of injunctive relief.

## CONCLUSION

For the above reasons, the Court **GRANTS** Plaintiff's motion for a preliminary injunction. The Court is afforded wide discretion in setting the amount of the bond when a preliminary injunction is issued, and that amount "may be zero if there is no evidence the party will suffer damages from the injunction." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003). Here, the Defendant did not request a bond or submit evidence regarding likely damages. As a result, this Court will set the bond amount to zero.

Under the Federal Rules of Civil Procedure, Rule 65, the Court enters the following injunction to be effective immediately:

1. Defendant Belton Technology Inc., and its agents, employees, assignees or board members, including but not limited to Defendants Catherine Yin and Thomas Lee, and including Defendant Majestic Plan Investments Ltd., **may not utilize or employ**

3:24-cv-01976-JAH-VET

any of Plaintiff or ATL's trade secrets in any location pending the resolution of this case and the arbitration currently ongoing in the Hong Kong International Arbitration Centre;[7]

2. Defendant Belton Technology Inc., and its agents, employees, assignees or board members, including but not limited to Defendants Catherine Yin, Thomas Lee, and Majestic Plan Investments, **are barred from assisting, aiding, or abetting "Asia Top Loyalty Alliance" in any capacity or in otherwise commercializing ATL's trade secrets without ATL's authorization**; and

3. Under Rule 65(d)(2)(C), the Court **enjoins** Defendants Catherine Yin, Thomas Lee, and Majestic Plan Investments by the two provisions above, as persons identified "in active concert or participation" with Defendant Belton Technology Inc. Defendants Catherine Yin and Thomas Lee shall also refrain from utilizing ATL's confidential information, accessed during their time as board members, for commercial gain.

**IT IS SO ORDERED.**

DATED:  September 29, 2025

JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE

---

[7] As described above, Plaintiff's trade secrets cover the software program that serves as the online platform between merchants and consumers known as the "Asia Top Loyalty" program, as licensed by ATL.