1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

9
10
11
12
13
14
15
16
17
18
19
20
21

| | |
|---|---|
| MU TECH, INC.,<br><br>               Plaintiff,<br><br>v.<br><br>CATHERINE CHAN KOK YIN,<br>THOMAS LESS CHEUK WAI,<br>MAJESTIC PLAN INVESTMENTS<br>LIMITED, BELTON TECHNOLOGY,<br>INC., AND DOES 1 THRU 50,<br><br>               Defendants. | Case No.:  3:24-cv-01976-JAH-VET<br><br>**ORDER**<br>**(1) GRANTING DEFENDANT BELTON TECHNOLOGY INC. and DEFENDANT CATHERINE YIN'S MOTION TO COMPEL ARBITRATION;**<br>**(2) DENYING DEFENDANT BELTON TECHNOLOGY INC.'s MOTION TO DISMISS;**<br>**(3) DENYING DEFENDANT CATHERINE YIN'S MOTION TO DISMISS; and**<br>**(3) DENYING DEFENDANT THOMAS LEE'S MOTION TO DISMISS**<br><br>**[ECF Nos. 12, 25, 30, & 42]** |

22
23
24
25
26
27
28

Pending before the Court are motions brought by Defendants Belton Technology Inc., Catherine Yin, and Thomas Lee.  Upon consideration of the matter, the Court GRANTS IN PART and DENIES IN PART Defendants' motions, and the Court GRANTS Defendants Belton Technology Inc. and Catherine Yin's motion to compel the case in its entirety to arbitration pursuant to 9 U.S.C. § 206.

///

# BACKGROUND

## A. Factual Background

On October 23, 2024, Plaintiff Mu Tech ("Plaintiff") filed its complaint against Defendants Belton Technology Inc., Catherine Yin, Thomas Lee, and Majestic Plan Investments Ltd. ("Defendants") for claims of trade secret misappropriation, breach of fiduciary duty, self-dealing, breach of contract, and tortious interference with prospective business interests.  ECF No. 1 at ¶¶ 29-54 ("Complaint" or "Compl.").  Plaintiff alleges Defendants conspired to deprive Plaintiff of its exclusive license to Asia Top Loyalty's ("ATL") intellectual property through launching a competitor company, Asia Top Loyalty Alliance, based on proprietary information Defendants Yin and Lee accessed while serving as board members of ATL.  Compl. at ¶¶ 13-17.  Plaintiff alleges Defendants copied the ATL business model and logo into Asia Top Loyalty Alliance, including by creating a LinkedIn page and website for the competitor platform that is virtually indistinguishable from those used by ATL, for the purpose of diverting investors and customers away from ATL.  *Id*. at ¶¶ 15-17.  Plaintiff also alleges that Defendants' theft of intellectual property constitutes breach of a contract signed between ATL and Defendants Yin, Lee, and Majestic Plan Investments, which includes clauses that bar the parties from the unauthorized disclosure of ATL's software program and client lists.  *Id.* at ¶ 21, Compl. Ex. A at §§ 6.1-6.3 (ECF No. 1 at 15-16) (herein "Guarantee Agreement").[1]  Plaintiff further alleges that Defendants are attempting to frustrate ATL's obligations under the Guarantee Agreement, including its requirement to offer an initial public offering on a reputable stock exchange, through their support of Asia Top Loyalty Alliance.  *Id.* at ¶¶ 22-24.

///

///

---

[1] Unless otherwise stated, page numbers referenced herein refer to page numbers generated by the CM/ECF system.

**B. Procedural History**

　　**i.　　Defendant Belton Technology Inc.**

On December 31, 2024, Defendant Belton Technology Inc. moved to dismiss Plaintiff's complaint under Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6), and in the alternative, moved to compel arbitration under 9 U.S.C. § 206. ECF No. 12. On March 9, 2025, Plaintiff filed its response in opposition. ECF No. 29. On March 17, 2025, Defendant filed its reply. ECF No. 33.

In its motion to dismiss, Defendant argues that Plaintiff fails to state a claim under the Defend Trade Secrets Act, 18 U.S.C. § 1836, and as a result, Plaintiff may not avail itself of federal question jurisdiction. ECF No. 12 at 12. Defendant also argues that Plaintiff lacks standing to bring claims for breach of fiduciary duty, self-dealing, and breach of contract on behalf of ATL, that Plaintiff does not adequately plead its claim of tortious interference with prospective business interests against the Defendant, and that dismissal of the complaint is proper because Plaintiff has filed the complaint in an improper venue. *Id.* at 15-20. Alternatively, Defendant requests the Court grant its motion to compel arbitration because the contract central to the dispute involves almost all named parties and requires that "[a]ny dispute, controversy or claim arising out of or relating" to the Guarantee Agreement be arbitrated in the Hong Kong International Arbitration Centre. *Id.* at 21-25.

　　**ii.　　Defendant Catherine Yin**

On March 10, 2025, Defendant Catherine Yin moved to dismiss Plaintiff's complaint under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5), and in addition, joined Defendant Belton Technology Inc.'s motions to dismiss and motion to compel arbitration. ECF No. 30. On April 9, 2025, Plaintiff filed its response in opposition. ECF No. 38. On April 16, 2025, Defendant Yin filed her reply. ECF No. 40.

Defendant Yin argues the Court lacks personal jurisdiction over her. Defendant argues that personal jurisdiction in California does not exist because Plaintiff's claims do not arise out of Defendant's contacts with California and, even if Defendant maintained

minimum contacts with California, the Court's exercise of personal jurisdiction over her would be unreasonable given the lack of evidence and witnesses present in California and the availability of an alternative forum in the Hong Kong International Arbitration Centre. ECF No. 30 at 16-17. Defendant also argues that service must be quashed and the case dismissed for insufficient process under Federal Rule of Civil Procedure 12(b)(5) because Plaintiff has not properly served her with the summons and complaint. *Id.* at 18-19.

### iii.    Defendant Thomas Lee

On April 30, 2025, Defendant Thomas Lee filed his motion to dismiss under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5). ECF No. 42. On June 19, 2025, Plaintiff filed its response in opposition. ECF No. 44. On June 27, 2025, Defendant Lee filed his reply. ECF No. 45.

Defendant Lee argues the Court lacks personal jurisdiction over him. ECF No. 42 at 4-9. Defendant argues he has no minimum contacts with California that relate to his investments in and board membership on ATL, and Defendant argues instead that his conduct at issue took place exclusively in Hong Kong. *Id.* Defendant also argues Plaintiff's service of the summons and complaint was defective under Federal Rule of Civil Procedure 4(e), requiring that service be quashed and the case dismissed for insufficient process. *Id.* at 9-12.

### <u>DISCUSSION</u>

### A. Jurisdiction

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). It is "presumed that a cause lies outside this limited jurisdiction," and "the burden establishing the contrary rests upon the party asserting jurisdiction." *Id.* The Court will review each jurisdictional challenge raised by Defendants in turn.

### i.    Defendant Belton Technology Inc.

Defendant Belton Technology Inc. argues that Plaintiff's complaint must be dismissed for failure to state a claim upon which relief can be granted under Federal Rule

of Civil Procedure 12(b)(6).  ECF No. 12 at 11.  Defendant argues that Plaintiff does not sufficiently allege its trade secret to state a claim under the Defense of Trade Secrets Act, 18 U.S.C. § 1836 et seq.  *Id.* at 12.  Defendant also argues that, because Plaintiff's complaint fails to present a federal question, and because diversity jurisdiction does not exist, the Court does not have subject-matter jurisdiction over the case.  *Id.* at 15. Defendant argues the case must be dismissed as a result on jurisdictional grounds under Federal Rule of Civil Procedure 12(b)(1).  *Id.*

Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A claim is "plausible" when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Courts evaluating a motion to dismiss under Rule 12(b)(6) must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party.  *Id.* The requirement that "a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.*  While a plaintiff need not give "detailed factual allegations," plaintiff must sufficiently plead facts that, if true, "raise a right to relief above the speculative level[.]"  *Twombly*, 550 U.S. at 555.  When ruling on a motion to dismiss, the Court's review is generally limited to the complaint and the documents attached to the complaint. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018).  The determination of whether a complaint states a plausible claim for relief will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In order to state a claim under the Defense of Trade Secrets Act, the plaintiff must show "(1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the

plaintiff." *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 657-58 (9th Cir. 2020). The federal statute defines a "trade secret" as any type of "financial, business, scientific, technical, economic, or engineering information" including formulas, programs, and codes that "the owner thereof has taken reasonable measures to keep such information secret[.]" 18 U.S.C. § 1839(3)(A). The information must also derive independent economic value from not being generally known. 18 U.S.C. § 1839(3)(B). "Misappropriation" under the statute is defined as either the acquisition of a trade secret by another person who has reason to know the trade secret was acquired by improper means or the disclosure or use of a trade secret without the consent of the trade secret's owner. 18 U.S.C. § 1839(5). The plaintiff may demonstrate actual or threatened damage by the misappropriation of a trade secret through unfair advantage gained by a competitor as a result of the trade secret's disclosure or through threat of complete loss of the trade secret by an unauthorized disclosure. *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 853 (N.D. Cal. 2019). There is no heightened pleading requirement for Defense of Trade Secret Act claims. *Alta Devices, Inc. v. LG Elec., Inc.*, 343 F. Supp. 3d 868, 882 (N.D. Cal. 2018).

Defendant argues that Plaintiff has only provided general allegations of its purported trade secret and that Plaintiff's allegations fail to provide sufficient notice of the boundaries of the purported trade secret as required by caselaw. *Id.* at 14. Plaintiff responds that ATL's computer code, web design, and business model all constitute valuable intellectual property protected by non-disclosure agreements and misappropriated by Defendant. ECF No. 29 at 10-11.

The plaintiff claiming a trade secret must provide the defendant with sufficient information "to ascertain at least the boundaries within which the secret lies." *Alta Devices*, 343 F. Supp. 3d at 881. At a point "where no discovery whatsoever had occurred," plaintiff may plead its claim of trade secrets more generally because "discovery provides an iterative process where requests between parties lead to a refined and sufficiently particularized trade secret identification." *InteliClear*, 978 F.3d at 658, 662. As long as the plaintiff provides "concrete identification" of the trade secret at issue so that defendant

3:24-cv-01976-JAH-VET

may prepare a rebuttal, plaintiff generally meets its pleading burden. *See id.* at 658. The plaintiff "cannot be expected to disclose publicly in the complaint the very secrets they are seeking to protect." *Alta Devices*, 343 F. Supp. 3d at 882.

Here, Plaintiff identifies its trade secret as "ATL's loyalty points exchange and proprietary system for eCommerce, pay-with-points, co-brand Mastercard and buy-now, pay-later system." Compl. at ¶ 10. As explained in an attachment to the complaint, ATL's system is based on a software program that connects businesses to individuals and allows businesses to design and launch promotional campaigns, including discounts on goods and services, to consumers. *Id.*, Ex. F at 30-33. The ATL software may also be used by banks, financial institutions, and companies that provide card-processing services in order to connect their consumers and clients with the discounts provided by participating businesses. *Id.* The software includes the ability for businesses and financial institutions to set an agreed-upon internal price for a discounted good or service and a slightly higher, consumer-oriented price for the same good or service, and the software allows for participating financial institutions and ATL to share in the profit margin between the two prices. *Id.* Plaintiff alleges that ATL's program was confidential and accessible to Defendants only through their directorships as board members of ATL, which they used to access and disclose the software program in furtherance of their efforts to launch the competitor "Asia Top Loyalty Alliance." Compl. at ¶¶ 13-15, 23. Plaintiff also alleges that the software program is central to ATL's business model and a source of economic value. *Id.* at ¶ 13.

Plaintiff has pled its trade secrets claim under the Defense of Trade Secrets Act with sufficient particularity and has provided Defendant Belton Technology Inc. with "concrete identification" of its claimed trade secret, namely the rewards and discount software program developed by ATL and replicated in its entirety by Asia Top Loyalty Alliance, a competitor allegedly fronted by all Defendants. *See InteliClear*, 978 F.3d at 658. Plaintiff has provided Defendant Belton Technology Inc. with sufficient information "to ascertain at least the boundaries within which the secret lies" and at most, the relevant software

platform for discounts and promotional campaigns that is at the heart of Plaintiff's claimed proprietary material. *See Alta Devices*, 343 F. Supp. at 880-882 (finding that claimant had provided both the court and opposing party with notice of the boundaries of the trade secret, and that even if the claims resembled "broad categories of trade secret information," they were specific enough to survive a motion to dismiss). At the pleading stage, Plaintiff provides sufficient information to place Defendant Belton Technology Inc. on notice of Plaintiff's trade secret claim. *See Alta Devices*, 343 F. Supp. 3d at 882.

Plaintiff has alleged that all named Defendants, including Defendant Belton Technology Inc., worked in concert to graft the entirety of the ATL consumer platform into the alleged rival Asia Top Loyalty Alliance platform. The Court finds, as a result, that Defendant Belton Technology Inc. has requisite notice of the specific subject matter claimed by Plaintiff as a trade secret to prepare its response. *See* Compl. at ¶¶ 10, 13-15; *see also Cisco Systems, Inc. v. Chung*, 462 F. Supp. 3d 1024, 1049-1050 (N.D. Cal. 2020) (finding the plaintiff had provided sufficient information for the defendant "to ascertain at least the boundaries within which the trade secret lies and the scope of appropriate discovery." (citation omitted)).

Accordingly, the Court finds Plaintiff plausibly pleads its claim of trade secrets misappropriation under the Defense of Trade Secrets Act, 18 U.S.C. § 1836 et seq. Because Plaintiff raises a claim arising under the laws of the United States, the Court has federal question jurisdiction over the matter. 28 U.S.C. § 1331. Accordingly, Defendant's motion to dismiss for failure to state a claim and for lack of subject-matter jurisdiction is DENIED.

### ii.    Defendant Catherine Yin

Defendant Yin argues that Plaintiff's claims against her must be dismissed for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). ECF No. 30 at 11. Defendant argues that she is not subject to either general or specific jurisdiction in California. *Id*. at 12-13. In response, Plaintiff argues that specific jurisdiction exists over the Defendant. ECF No. 38 at 8-13.

"The party seeking to invoke jurisdiction has the burden of establishing that jurisdiction exists." *Flynt Dist. Co., Inc. v. Harvey*, 734 F.2d 1389, 1392 (9th Cir. 1984). When a motion to dismiss for lack of personal jurisdiction is "based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020) (quotation and citation omitted). The uncontroverted allegations in the complaint are taken as true and all genuine factual disputes are resolved in favor of the plaintiff. *Id.* *See also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 798 (9th Cir. 2004) (finding "the prima facie jurisdictional analysis requires us to accept the plaintiff's allegations as true" and that courts generally "must adopt [the plaintiff's] version of events.") (citation omitted).

Federal courts within California may exercise personal jurisdiction to the fullest extent permissible under the U.S. Constitution given California's long-arm statute. *Beneficio*, 972 F.3d at 1106 (finding that federal courts normally follow state law in determining the limits of their jurisdiction over persons, and concluding that California's long-arm statute confers federal courts with the fullest extent of personal jurisdiction permitted by due process). As a result, the Court's inquiry rests on whether an exercise of personal jurisdiction comports with due process. *Id.* In cases where the defendant does not maintain contacts so continuous and systematic as to render the defendant "at home" in the forum state, courts evaluate whether the defendant has "at least minimum contacts with the relevant forum" such that the exertion of jurisdiction over the defendant comports with "traditional notions of fair play and substantial justice" as required by due process. *Id* at 1106-7, 1109.

Under personal jurisdiction based on minimum contacts, also known as specific jurisdiction, courts must analyze a three-prong test, requiring (1) the non-resident defendant either purposefully directed activities within the forum state or performed an act by which the defendant purposefully availed himself or herself of the privileges of conducting activities in the forum state, (2) the claim arises out of or relates to the

defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable. *Id* at 1107. If the plaintiff satisfies the first two prongs of the test, the burden shifts to the defendant to present a "compelling case" that the exercise of jurisdiction would be unreasonable. *Id.*

### a. Specific Jurisdiction Analysis

The Court first turns to whether Defendant Yin purposefully availed herself of the California forum. Courts evaluate "whether the defendant purposefully established minimum contacts within the forum," and courts must evaluate the "entire course of dealing" between the parties in the assessment. *Beneficio*, 972 F.3d 1108 (citation omitted). Because the Court's decision rests on the "written materials rather than an evidentiary hearing," Plaintiff's factual allegations are construed as true and any genuine factual disputes are construed in favor of Plaintiff. *See id.* at 1106.

Defendant Yin argues her role as a director of Belton Technology Inc., a California company, had no connection with her role as a board member of ATL. ECF No. 30 at 15. Defendant also argues that she did not know about ATL's plan to launch its initial public offering through Plaintiff in the United States, and Defendant Yin argues that Belton Technology Inc. has had no relationship with either ATL or Plaintiff. *Id.* at 15-16. Defendant Yin concedes that Defendant Belton Technology Inc. is a corporation incorporated under the laws of California with its principal place of business in Santa Fe Springs, California. *Id.* at 8.

Under *Beneficio*, the Court first reviews Plaintiff's factual allegations. Plaintiff alleges that Defendant Yin used her position as a board member of ATL to access and disclose ATL's intellectual property to harm ATL and benefit Defendant Belton Technology Inc. Compl. at ¶¶ 17-19, 23-24. Plaintiff also alleges that Defendant Yin and Belton Technology Inc. worked in concert with the remaining Defendants to graft the entirety of the ATL platform into a competitor, Asia Top Loyalty Alliance, so that investors and consumers would be diverted from ATL. *Id.* at ¶¶ 13-15. Plaintiff has alleged the

3:24-cv-01976-JAH-VET

existence of a broader conspiracy involving both Defendant Yin and Defendant Belton Technology Inc.

Plaintiff further alleges that Defendants Yin and Lee had previously viewed ATL's financial information during their tenure as board members of ATL and discovered that ATL's short-term assets were not sufficient to both (1) complete its initial public offering within the United States and (2) buy back the shares held by Defendant Majestic Plan Investments, which is allegedly owned by Defendant Yin, under the terms of the Guarantee Agreement. *Id.* at ¶¶ 23-24. Based upon this information, Defendants Yin, Lee, Belton Technology Inc., and Majestic Plan Investments are alleged to have created Asia Top Loyalty Alliance to create confusion in the marketplace and to prevent ATL from raising the capital it needed from investors to complete its initial public offering. *Id.* at ¶¶ 22-24. Plaintiff alleges that all Defendants sought to prevent ATL from completing its public offering on the U.S. stock market so that ATL would be frustrated or otherwise unable to fulfill its contractual obligations under the terms of the Guarantee Agreement it had signed with Defendants. *Id.* at ¶¶ 21-23; *and see* Guarantee Agreement at § 4.1 (requiring ATL to trade, sell, or list itself on a reputable stock exchange by December 31, 2023). Under the conspiracy as alleged, Defendants then initiated arbitration against ATL for breach of the Guarantee Agreement's stock exchange clause and currently seek to force ATL into buying back $2 million in shares from Defendant Majestic Plan Investments under the breach-of-contract terms of the Guarantee Agreement, a move that would place ATL in bankruptcy and susceptible to an acquisition by Defendant Belton Technology Inc. *Id.* at ¶¶ 23-25. Across the above-described enterprise, Plaintiff has alleged that Defendants Yin and Lee collaborated with one another and maintained either employment or board membership with Defendant Belton Technology Inc. *Id.* at ¶¶ 23-24, 41.

"Interpreting genuine factual disputes in [Plaintiff's] favor—as we must in this posture," the Court finds that Plaintiff has made a prima facie showing that Defendant Yin purposefully availed herself of the California forum by her collaboration with Defendant Belton Technology Inc. *See Beneficio*, 972 F.3d at 1108. Defendant Yin currently serves

as board member of Defendant Belton Technology Inc., a California company, and Plaintiff has alleged that both Defendants Yin and Belton Technology Inc. worked in concert to launch Asia Top Loyalty Alliance to prevent ATL's initial public offering within the United States and to place ATL in financial distress. Plaintiff has alleged that Defendant Yin assented to the disclosure of ATL's confidential information without authorization to Defendant Belton Technology Inc., and that Defendants Yin and Belton Technology Inc. sought to place ATL in economic hardship so that ATL could become a subsidiary of Belton. Construing Plaintiff's factual allegations as true, and resolving genuine factual disputes in Plaintiff's favor, the Court finds that Defendant Yin purposefully directed activities towards the California forum, including by allegedly conspiring with a California corporation on which she sits as a board member, for the purpose of harming ATL for Defendants' benefit.

Second, the Court evaluates whether the claims against Defendant Yin "arise out of or relate to the defendant's forum-related activities." *See Beneficio*, 972 F.3d at 1107. Plaintiff's claims of trade secrets misappropriation, self-dealing, and tortious interference with prospective business interests involve conduct, as described above, that includes Defendant Yin's collaboration with Defendant Belton Technology Inc., a California company, to block ATL's initial public offering through its licensee, Plaintiff, in California. ECF No. 38 at 9. While Defendant disputes that Plaintiff does business in California, *see* ECF No. 30 at 16, Plaintiff represents that it engages in business in California and has sought to launch ATL's services and initial public offering in the United States from California, an endeavor which has been hamstrung by Defendants. Compl. at ¶ 5, ¶¶ 52-54; ECF No. 38 at 9. Resolving "all genuine factual disputes in the plaintiff's favor," as the Court must at the pleading stage, the Court finds that the claims against Defendant Yin "arise out of or relate to the defendant's forum-related activities." *See Beneficio*, 972 F.3d at 1106, 1107. After finding Plaintiff successful on the first two prongs of the specific jurisdiction analysis, the burden shifts to the Defendant to "'present a

3:24-cv-01976-JAH-VET

compelling case' that the exercise of jurisdiction would not be reasonable." *See id.* at 1107 (citations omitted).

### b. Reasonableness of Personal Jurisdiction

A defendant seeking to defeat personal jurisdiction after a finding that it has maintained minimum contacts with a forum state may make a "compelling case" that jurisdiction is unreasonable where, despite the defendant's purposeful availment of the forum state and the relatedness of the claims at issue with the forum state, there exists some other considerations that would render jurisdiction "unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). These considerations include choice-of-law provisions that conflict between different states and the substantial inconvenience a defendant may face in defending an action in the forum state. *Id.* Most of these considerations, however, "may be accommodated through means short of finding jurisdiction unconstitutional." *Id.*

While there may be "inconvenience" for the Defendant maintaining a suit in California, Defendant is designated as a board member of a California corporation named as a defendant in this case, and Plaintiff has factually alleged a conspiracy between the Defendant and the corporation that allegedly harmed ATL and Plaintiff's business activities in California. As a result, finding personal jurisdiction over Defendant Yin in this case is "certainly nothing which amounts to a denial of due process." *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 224 (1957). Because Defendant has made no showing that "trial [in California] will be so gravely difficult and inconvenient that [she] will for all practical purposes be deprived of [her] day in court," the Court does not find exertion of personal jurisdiction unreasonable on the basis of Plaintiff's prima facie showing. *See Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972). For the reasons stated above, the Court finds that it maintains specific jurisdiction over Defendant Yin and DENIES her motion to dismiss for lack of personal jurisdiction.

///

///

### iii.    Defendant Thomas Lee

Defendant Lee argues Plaintiff's claims against him must be dismissed under Federal Rule of Civil Procedure 12(b)(2) because the Court does not have personal jurisdiction over him.  ECF No. 42 at 4-5.  Plaintiff responds by arguing that factual allegations demonstrate a conspiracy between Defendant Lee and Defendants Yin and Belton Technology Inc. to misappropriate and economically harm ATL and Plaintiff.  ECF No. 44 at 2-3.

Plaintiff alleges Defendant Lee worked as an agent of Defendant Belton Technology Inc., a California corporation, to benefit the company at the expense of ATL.  Compl. at ¶¶ 24-25.  Plaintiff alleges that Defendant Lee used his position as a director of ATL to gain confidential and private access to ATL's intellectual property and confidential information.  *Id.* at ¶ 23.  Plaintiff also alleges that, once Defendant Lee discovered ATL's assets were not sufficient to buy-back Defendant Yin's shares in ATL, Defendant Lee conspired with Defendants Yin and Belton to frustrate ATL's obligations under the Guarantee Agreement.  *Id.* at ¶¶ 23-24.  Plaintiff alleges that Defendant Lee conspired to place ATL in breach of the Guarantee Agreement's requirement that ATL list on a reputable stock exchange by December 31, 2023 by interfering with ATL's initial public offering.  *Id.* at ¶¶ 23-25.  Plaintiff alleges Defendant Lee (1) conspired to launch the competitor, "Asia Top Loyalty Alliance" to confuse investors and consumers, (2) pressured the ATL CEO to engage an expensive firm in creating a "shell corporation" in exchange for settling the arbitration and litigation, and (3) signed contracts on behalf of ATL and routed funds that belonged to ATL to a separate bank account he created.  *Id.* at ¶ 14, ¶ 25, & ¶ 27.  Plaintiff has alleged that Defendant Lee, working in conjunction with Defendants Yin and Belton Technology Inc., engaged in the above conduct to block ATL's initial public offering and place ATL in breach of the Guarantee Agreement, from which Defendants knew ATL could not recover.  *Id.* at ¶¶ 23-24.  Plaintiff alleges the conspiracy operated with the motive of placing ATL into financial distress and susceptible to a takeover by Belton.  *Id.* at ¶¶ 24-25.

Here, construing Plaintiff's factual allegations as true for purposes of assessing personal jurisdiction, the Court finds substantial collaboration between Defendant Lee and Defendant Belton Technology Inc., a California corporation, for the benefit of the California entity.  *See Beneficio*, 972 F.3d at 1106.  As previously noted, federal courts construe the factual allegations contained in the complaint as true and resolve genuine factual disputes in favor of the plaintiff when evaluating personal jurisdiction based "on written materials," when challenges to personal jurisdiction are made at an early stage in the proceedings.  *Beneficio*, 972 F.3d at 1106.   While Defendant Lee's arguments are closer on the issue of personal jurisdiction than Defendant Yin's, Plaintiff has factually alleged a significant relationship between Defendant Lee and Defendant Belton Technology Inc., including Defendant Lee's employment with Belton Technology while serving as a corporate officer for ATL and the significant materials Defendant Lee transferred to Belton from ATL for Belton's benefit.  In light of the totality of the factual allegations made by Plaintiff regarding Defendant Lee's conspiracy with Defendants Yin and Belton Technology Inc., the Court finds based on the written materials submitted at this stage in the proceedings that Defendant Lee maintained at least minimum contacts with the California forum.  *See Beneficio*, 972 F.3d at 1106-1107.

Resolving the threshold jurisdictional issues raised by the parties, the Court now proceeds to the remainder of the Defendants' motions.

///

///

### B. Defendant Belton Technology Inc. and Defendant Yin's Motion to Compel Arbitration

Courts presented with both a motion to dismiss and a motion to compel arbitration may adjudicate the motions in any order. *Hebei Hengbo New Materials Tech. Co., Ltd. v. Apple, Inc.*, 344 F. Supp. 3d 1111, 1120 (N.D. Cal. 2018) (finding no "mandated order" in which the court must decide the two motions). If the movant is successful on its motion to compel arbitration, courts may dismiss the remainder of the action as moot given the matter's transfer from federal court to the arbitration forum. *Id.* at 1120 (finding that "[a] favorable ruling for Plaintiff on the Motion to Compel Arbitration would eliminate any need to consider the Motion to Dismiss."). Accordingly, the Court will first evaluate Defendant Belton Technology Inc. and Defendant Yin's motion to compel arbitration, *see* ECF No. 12 at 20-25 *and* ECF No. 30 at 7, n.1, before turning to the remainder of the Defendants' motions to dismiss.

### I.    Legal Standard

The Supreme Court has recognized "the emphatic federal policy in favor of arbitral dispute resolution," which "applies with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985). The Convention on the Recognition and Enforcement of Foreign Arbitral Awards, implemented by Congress in 9 U.S.C. § 201 et seq. (herein "Convention" or "New York Convention"), requires federal courts to compel arbitration in foreign territories when agreements include arbitration clauses that select for arbitration abroad. 9 U.S.C. §§ 201, 202. Federal courts review four factors when determining whether to enforce an arbitration agreement under the Convention. *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 654-55 (9th Cir. 2009). The factors require that "(1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not

3:24-cv-01976-JAH-VET

an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states." *Id.* at 654-55 (citation omitted).

## II.    Discussion

Defendants argue the New York Convention requires that this case be arbitrated in the Hong Kong International Arbitration Centre, the arbitration venue selected by the Guarantee Agreement's arbitration clause. ECF No. 12 at 21-25. Defendants contend that the Guarantee Agreement, signed between ATL's chief executive officer and Defendants Catherine Yin, Thomas Lee, and Majestic Plan Investments, includes a clear and unambiguous agreement to arbitrate any claim or controversy arising from the agreement in the Hong Kong International Arbitration Centre. *Id.* at 22-23. Defendants argue that all four factors of the *Balen* analysis under the New York Convention are met in this case and counsel in favor of compelling arbitration. *Id.* at 21-23. Defendants also argue that the entirety of Plaintiff's claims, including breach of the Guarantee agreement, trade secret misappropriation, breach of fiduciary duty, self-dealing, and tortious interference with prospective business interest all "arise out of" or "relate to" the parties' relationships under the Guarantee Agreement. ECF No. 33 at 9.

Plaintiff responds by arguing that the present dispute falls outside of the scope of the Guarantee Agreement's arbitration clause because it involves intellectual property theft, which ATL did not anticipate when it entered into the Guarantee Agreement with Defendants Yin, Lee, and Majestic Plan Investments. ECF No. 29 at 14. Plaintiff contends that public policy exceptions counsel against enforcement of the arbitration clause when intellectual property theft is involved because Defendants' wrongful conduct "threatens U.S. economic interests." *Id.* Plaintiff also argues that Defendants' allegedly fraudulent conduct under the contract makes the arbitration clause unenforceable. *Id.* at 15.

### a.  Third-Party Standing to Compel Arbitration

As a threshold matter, neither party has briefed the issue of whether Plaintiff, which is not a party to the Guarantee Agreement, can be compelled to arbitrate its claims against

Defendants in the Hong Kong International Arbitration Centre.  *See* Guarantee Agreement at 1 (ECF No. 1 at 13).

Because neither party has briefed the issue, the parties have waived arguments on standing to compel arbitration.  *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) (finding waiver on an issue when a party fails to present their argument to the district court).  Even if the argument was not waived, the Court finds no issue with compelling the parties to arbitration in this case.

"[N]onsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles."  *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (citation omitted).  When a non-signatory is an agent of a signatory to an arbitration agreement, the non-signatory may be compelled to arbitrate claims arising from the agreement.  *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187-1188 (9th Cir. 1986) (agreeing with other circuit courts that "have held consistently that nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles.").  In addition, a non-signatory party may invoke a contract's arbitration clause to compel arbitration of a dispute when the causes of action at issue "are *intimately founded in and intertwined with the underlying contract* obligations."  *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1129 (9th Cir. 2013) (citations omitted) (emphasis in the original).

Under "ordinary contract and agency principles," Plaintiff may be bound to the Guarantee Agreement's arbitration clause.  *See Letizia*, 802 F.2d at 1187.  Based on the record, there exists a "virtual abandonment of separateness" between Plaintiff and ATL, given that ATL created and controls Plaintiff's corporate entity in order to comply with terms of the Guarantee Agreement.  *See Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 778 (2d Cir. 1995) (analyzing agency principles in the determination of whether non-signatories may be compelled to arbitration), *and see Comer*, 436 F.3d at 1101 (incorporating the Second Circuit's analysis in *Thomson-CSF*).  Plaintiff shares the same chief executive officer and shareholders as ATL, and Plaintiff's corporate entity was

created by ATL to comply with provisions of the Guarantee Agreement. Plaintiff has made representations to this Court that "Mu Tech was the plan the entire time according to Section 4.1 of the agreement," "[t]he president and CEO of Mu Tech is Andy Chen" (the chief executive officer of ATL), "[t]he shareholders of Mu Tech are the exact same shareholders of ATL," and that Plaintiff "is a vehicle by which the company was fulfilling its obligations to its shareholders and to the Guarantee Agreement." Hr. Tr. 120: 17-25, 121: 1-7 (ECF No. 20). As a result, under ordinary contract and agency principles, Plaintiff is bound by ATL's obligations under the Guarantee Agreement, including its arbitration clause.

The Court also finds that Defendant Belton Technology Inc. has third-party standing to enforce the arbitration clause. When a plaintiff brings claims against a non-signatory defendant that are "intimately founded in and intertwined with" the underlying contract at issue, the non-signatory defendant may enforce the contract's arbitration clause against the plaintiff under the doctrine of equitable estoppel. *Kramer*, 705 F.3d at 1128-1129.

### i. Plaintiff's Claims Under the Guarantee Agreement

Here, Plaintiff brings claims against Defendants for misappropriation of trade secrets (Compl. at ¶¶ 30-32) and tortious interference with prospective business interests (*Id.* at ¶¶ 50-54). Plaintiff claims that Defendants conspired to launch the competitor, "Asia Top Loyalty Alliance," in breach of the non-compete and non-disclosure clauses of the Guarantee Agreement signed by ATL's chief executive officer and Defendant Yin (on behalf of Majestic Plan Investments) and Defendant Lee. *Id.* at ¶¶ 13-14, 30-31, *and see* Guarantee Agreement at §§ 6.1-6.3 (describing the non-compete and non-disclosure obligations of the Guarantors). Plaintiff also alleges that Defendants intentionally interfered with ATL's plan to use Plaintiff to complete its initial public offering in the United States. *Id.* at ¶¶ 51, 54, *and see* Guarantee Agreement at § 4.1 (describing ATL's requirement to trade, sell, or list itself on a reputable stock exchange by December 31, 2023). Because Plaintiff's claims against Defendants are "intimately founded in and

intertwined with" the Guarantee Agreement, Defendants have standing to compel Plaintiff into arbitration under the agreement's arbitration clause.  *See Kramer*, 705 F.3d at 1129.

### b.  Application of the New York Convention on Foreign Arbitration

Defendants argue that the arbitration clause in the Guarantee Agreement must be enforced under the New York Convention because all four factors of the *Balen* analysis are met in this case.  ECF No. 12 at 21 (citing to *Balen*, 583 F.3d at 654-655).  Plaintiff does not dispute Defendants' arguments under *Balen*.  Instead, Plaintiff raises multiple defenses to arbitrability, including fraud, unconscionability, and public policy exceptions that counsel against compelled arbitration.  ECF No. 29 at 14-15.  In reply, Defendants argue that Plaintiff fails to contest the application of the New York Convention to the dispute and has therefore conceded that the case is amenable to arbitration in the Hong Kong International Arbitration Centre.  ECF No. 33 at 9-10.

A party waives argument when it fails to respond to an argument made to the court. *See Smith*, 194 F.3d at 1052.  Generally, "the argument must be raised sufficiently for the trial court to rule on it."  *Sofamor Danek Grp., Inc. v. Brown*, 124 F.3d 1179, 1186 n.4 (9th Cir. 1997) (citations omitted).  Here, Plaintiff does not argue that any of the factors evaluated under *Balen* counsel against the application of the New York Convention to the instant dispute.  As a result, the Court finds the case amenable to compelled arbitration. The Court's review of *Balen* and the arbitration clause of the Guarantee Agreement also confirm this outcome.

Here, the Guarantee Agreement is a share subscription agreement that constitutes a writing within the meaning of the Convention.  *See* 9 U.S.C. § 202 (establishing jurisdiction under the Convention for contracts "considered as commercial.").  The agreement, signed between Defendant Catherine Yin on behalf of Defendant Majestic Plan Investments and Andy Chen, Defendant Thomas Lee, and Shun Chung (the "Guarantors"), requires, among other provisions, that the Guarantors (1) not dilute the shares held by Majestic Plan Investments, (2) offer Majestic Plan Investments the right of first refusal on stock sales, and (3) cease from engaging in conduct that could compete with ATL's

financial success, either by soliciting clients away from ATL, divulging the company's confidential information to third parties, or using trade names that could reasonably be confused with the name of the company.  *See* Guarantee Agreement §§ 1.1, 3.1, 4.1, 6.1-6.3.  In exchange, Majestic Plan Investments agreed to buy 15,721 shares in ATL.  *See id.* at 1 ("Recitals").  Under the first and third factors of the *Balen* analysis, the agreement constitutes both a written contract and one that is "considered commercial."  *See Balen*, 583 F.3d at 655.

Second, the Guarantee Agreement provides for arbitration in the territory of a signatory to the Convention.  *Balen*, 584 F.3d at 654.  The Guarantee Agreement includes an arbitration clause, and the clause selects the Hong Kong International Arbitration Centre as the arbitration forum for the dispute.  *See* Guarantee Agreement § 7.3.  The clause states:

> § 7.3. Any dispute, controversy or claim arising out of or relating to this Agreement, or the breach, termination or invalidity thereof, shall be resolved first by mediation as introduced under the Civil Justice Reform since 2 April 2009. If both parties cannot reach a mutual agreement through mediation, the matter shall be referred to arbitration in Hong Kong by a sole arbitrator and the award thus issued shall be final and binding. The language of the arbitration shall be in English. The arbitration shall be administered by the Hong Kong International Arbitration Centre under its prevailing arbitration rules.  *See* Guarantee Agreement, Compl. Ex. A. (ECF No. 1 at 16).

Under the arbitration clause, "[a]ny dispute, controversy or claim arising out of or relating" to the Agreement, "or the breach, termination or invalidity thereof…shall be referred to arbitration in Hong Kong."  *Id.*  In addition to the inclusion of an arbitration clause, the Guarantee Agreement requires arbitration in Hong Kong, a territory that is a signatory to the New York Convention.[2]

---

[2] Defendants contend, and Plaintiff has not disputed, that Hong Kong exists within a territory that is a signatory of the Convention.  ECF No. 12 at 23.  The Court also takes judicial notice that Hong Kong is listed as a participating territory under the New York Convention.  FED. R. EVID. 201(b)(2), 201(c)(1) (allowing courts to take independent

Under the remaining *Balen* factor, the Guarantee Agreement also includes "a party to the agreement [who] is not an American citizen." *See Balen*, 583 F.3d at 655. The parties to the Guarantee Agreement, Majestic Plan Investments, Andy Chen, Thomas Lee, and Shun Chung, are all citizens of foreign countries. *See* Guarantee Agreement at 1 (stating that Majestic Plan Investments is a company incorporated in the British Virgin Islands and that Andy Chen, Thomas Lee, and Shun Chung are all residents of Hong Kong). Because all four factors under *Balen* are met, and because Plaintiff has disputed no part of the *Balen* analysis in its submissions, the Court finds the New York Convention applicable to the Guarantee Agreement. Under the Convention, the Court finds the parties bound by arbitration in the Hong Kong International Arbitration Centre, the arbitration tribunal selected by the contract.

### c. Plaintiff's Arguments Against Arbitration

Plaintiff advances three arguments against application of the Guarantee Agreement's arbitration clause. ECF No. 29 at 14-15. Plaintiff argues (1) the dispute falls outside the scope of the arbitration clause, (2) that Defendants engaged in malfeasance when entering into the Guarantee Agreement which renders the agreement unenforceable, and (3) that public policy exceptions to enforcement of the arbitration clause apply. *Id*. Defendants respond by arguing that all claims raised by Plaintiff clearly "arise out of or relate to" the Guarantee Agreement and are therefore subject to arbitration. ECF No. 33 at 8-9. Defendants further contend that alleged wrongful conduct does not preclude enforcement of the arbitration clause, and no public policy exceptions exist in this dispute. *Id*. The Court evaluates each argument in turn.

///

///

---

judicial notice of facts that can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). *See* Status: Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Note (h).

1

**i.  Scope of the Arbitration Clause**

2       Plaintiff argues Defendants' conduct under the Guarantee Agreement does not fall

3   squarely within the scope of the arbitration clause.  ECF No. 29 at 14.  Defendant argues

4   that the text of the arbitration clause is "broad and far reaching," and encompasses every

5   dispute between the parties with a significant relationship to the Guarantee Agreement,

6   including the instant dispute.  *See* ECF No. 12 at 22 *and* ECF No. 33 at 8-9.

7       The Supreme Court has held that "as a matter of federal law, any doubts concerning

8   the scope of arbitrable issues should be resolved in favor of arbitration, whether the

9   problem at hand is the construction of the contract language itself or an allegation of

10  waiver, delay, or a like defense to arbitrability."  *Mitsubishi Motors*, 473 U.S. at 626

11  (citation omitted).  Courts evaluate the arbitration clause at issue to determine whether the

12  clause is "broad and far reaching" or limited in scope.  *Chiron Corp. v. Ortho Diagnostic*

13  *Systems, Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000).  If the scope of the arbitration clause

14  "is arguably susceptible of an interpretation that the parties agreed to arbitrate" the claims

15  in dispute, federal courts must resolve the issue of scope in favor of arbitration.  *Republic*

16  *of Nicar. v. Standard Fruit Co.*, 937 F.2d 469, 479 (9th Cir. 1991).

17      Here, the arbitration clause states that "[a]ny dispute, controversy or claim arising

18  out of or relating to this Agreement, or the breach, termination or invalidity thereof…shall

19  be referred to arbitration in Hong Kong."  *See* Guarantee Agreement at § 7.3.  The language

20  of the arbitration clause is "broad and far reaching" and makes no reference to specific

21  claims that have been excluded by the parties from the scope of arbitration.  *See Chiron*

22  *Corp.*, 207 F.3d at 1131 (finding that breach of contract claims under an agreement must

23  be compelled to arbitration when the agreement's arbitration clause includes language like

24  "[a]ny dispute, controversy or claim arising out of or relating to the…Agreement shall be

25  settled by binding Alternate Dispute Resolution.").  Because Plaintiff's claims against

26  Defendants arise out of and relate to the Guarantee Agreement, *see supra* B.II.a.i.

27  ("Plaintiff's Claims Under the Guarantee Agreement"), Plaintiff's claims clearly fall

28  within the scope of the arbitration clause.

3:24-cv-01976-JAH-VET

### ii.    Validity of the Arbitration Clause

Plaintiff contends that the presence of theft or fraud by Defendants invalidates the arbitration clause of the Guarantee Agreement and that the arbitration clause "must be deemed unenforceable." ECF No. 29 at 15. Defendants respond by arguing that the clear weight of caselaw supports resolving any doubts on the enforceability of arbitration, including whether an arbitration clause is valid, in favor of compelling arbitration. ECF No. 33 at 8-9.

A party may avoid arbitration under the New York Convention if the agreement to arbitrate is "null and void" and therefore unenforceable. *Balen*, 583 F.3d at 653-654, *and see Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1157-58 (9th Cir. 2008). Courts may decline to send the case to arbitration upon a finding that the agreement to arbitrate "resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract.'" *Mitsubishi Motors*, 473 U.S. at 627 (citation omitted). The party opposing arbitration must argue by "well-supported claims" that the formation of the contract, or the inclusion of the arbitration clause, was the product of fraud or duress. *Id.*

Here, Plaintiff contends that it "did not anticipate Defendant's malfeasances when entering into their relationship, contractual or otherwise." ECF No. 29 at 14. In the complaint, Plaintiff alleges that Defendants "never had any intention of honoring the Guarantee Agreement and simply used it as a 'trojan horse' to gain access to ATL's IP." Compl. at ¶ 49. While Plaintiff's allegation raises an inference that the formation of the Guarantee Agreement was the product of fraud, the factual allegation is a single sentence within Plaintiff's filings that raises this inference.[3] No additional factual allegations are

---

[3] Plaintiff raises several allegations about fraudulent conduct undertaken by Defendants *after* the signing of the Guarantee Agreement, including the Defendants' use of their board memberships to view ATL's financial statements and transfer ATL's proprietary materials to the competitor they supported, Asia Top Loyalty Alliance. *See e.g.* Compl. at ¶¶ 15-19, 23. In contrast, Plaintiff has made minimal to no factual allegations that Defendants

raised by Plaintiff to support its claim of fraud in contract formation by Defendants. Because Plaintiff has provided no "well-supported claims" that the formation of the Guarantee Agreement between the parties was the product of fraud or duress, the Court finds the arbitration clause enforceable. *See Mitsubishi Motors*, 473 U.S. at 627.

Even if Plaintiff's sparse argument on contract fraud raises doubt on whether the case may be compelled to arbitration, precedent is clear: "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is…an allegation of waiver, delay, or a like defense to arbitrability." *Mitsubishi Motors*, 473 U.S. at 626 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). Courts must give effect to arbitration clauses and compel the case to adjudication by an arbitration panel, even on threshold issues like defenses to arbitration, based on the "strong belief in the efficacy of arbitral procedures for the resolution of international commercial disputes." *Mitsubishi Motors*, 473 U.S. at 631. The terms of the Guarantee Agreement also assign disputes involving "breach, termination or invalidity" of the Guarantee Agreement to the Hong Kong International Arbitration Centre for adjudication. *See* Guarantee Agreement at § 7.3. As a result, the Court finds the arbitration clause valid as a threshold matter. The Court also finds that Plaintiff has preserved the issue of fraud in contract formation and breach of contract for arbitral review.

### iii.  Public Policy Exceptions

Plaintiff argues, as its third and final defense, that the Supreme Court recognizes public policy exceptions to the enforcement of the arbitration clause. ECF No. 29 at 14 (citing to *Mitsubishi Motors*, 473 U.S. at 637 n.19). Plaintiff argues that trade secrets theft, which "threatens U.S. economic interests," falls into a public policy exception. *Id.*

---

engaged in fraud *before* or *during* the signing of the Guarantee Agreement with ATL, and Plaintiff has made no factual allegations that Defendants engaged in fraudulent conduct for the purposes of securing the contract with ATL. Because Plaintiff has not supported any allegation of fraud in the formation of the Guarantee Agreement by "well-supported claims," the fraud defense is not successful. *See Mitsubishi Motors*, 473 U.S. at 627.

Defendants argue that no such public policy exception exists under the Federal Arbitration Act or precedent. ECF No. 33 at 9.

The public policy exception to the New York Convention "applies only when confirmation or enforcement of a foreign arbitration award 'would violate the forum state's most basic notions of morality and justice.'" *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1096-1097 (9th Cir. 2011) (citations omitted). It is a defense that applies only *after* an arbitration adjudication has taken place, and it must be "construed narrowly." *Id.* at 1096-1097 (citation omitted).

Here, the public policy exception applies "when a party seeks to enforce a foreign arbitral award, not an agreement to arbitrate." *Wash. Sch. Risk Mgmt. Pool v. Am. Re-Insurance Co.*, 2022 WL 2718479, *5 (W.D. Wash. April 21, 2022) (collecting cases). While Plaintiff relies on *Mitsubishi Motors* for the proposition that a public policy exception to arbitration exists for claims of trade secrets theft, *Mitsubishi Motors* does not support Plaintiff's argument. *Mitsubishi Motors* holds that an arbitration tribunal that bars a party's right to pursue statutory remedies, when those statutory claims fall within the scope of an arbitration agreement, may arrive at a decision and an award whose enforcement by federal courts would be against U.S. public policy. *See* 473 U.S. at 637 n.19. This Court has "no occasion to speculate on this matter at this stage in the proceedings, when [Defendants] seeks to enforce the agreement to arbitrate, not to enforce an award." *See id.* While Plaintiff raises a statutory claim under the Defend Trade Secrets Act against Defendants, the claim is intertwined with the non-compete and non-disclosure obligations of the signatories under the Guarantee Agreement. Plaintiff has pointed to no legislative text within the Defend Trade Secrets Act indicating that Congress has barred federal trade secret claims from being sent to arbitration. *See Mitsubishi Motors*, 473 U.S. at 627-628 (finding that "if Congress intended the substantive protection afforded by a given statute to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history."). Plaintiff has also "failed to

3:24-cv-01976-JAH-VET

establish that [it] could not pursue any of [its] statutory claims in an arbitration proceeding" within the Hong Kong International Arbitration Centre. *See Balen*, 583 F.3d at 654. At the award-enforcement stage, the Court may ascertain whether the arbitration tribunal took cognizance of Plaintiff's federal trade secret claims and decided them. *See Mitsubishi Motors*, 473 U.S. at 638, *and see Balen*, 583 F.3d at 654. The public policy defense raised by Plaintiff is premature at this stage in the matter, and as a result, Plaintiff's public policy defense is not successful.

### C. Remainder of Defendant Belton Technology Inc., Defendant Yin, and Defendant Lee's Motion to Dismiss

Upon finding success on a motion to compel arbitration, district courts may grant the motion to compel arbitration and may deny any remaining motions as moot. *Hebei*, 344 F. Supp. 3d at 1120 (finding, after surveying precedent, that a "favorable ruling…on the Motion to Compel Arbitration would eliminate any need to consider the Motion to Dismiss."). This is so because the federal court's "role is strictly limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator." *Chiron Corp.*, 207 F.3d at 1131 (citation omitted). After deciding the jurisdictional issues of this case and Defendants' motion to compel arbitration, and upon finding success on the motion, the Court has no need to engage in further analysis regarding the sufficiency of Plaintiff's complaint, the selection of the proper venue to litigate this case, or Plaintiff's compliance with the requirements of service under the Federal Rules of Civil Procedure. As a result, the Court DENIES the remainder of Defendant Belton Technology Inc.'s motion to dismiss as moot, including its argument on venue, ECF No. 12 at 20, and the Court similarly DENIES Defendant Yin and Defendant Lee's motions to dismiss for insufficiency of service under Federal Rule of Civil Procedure 12(b)(5) as moot.

///

///

## **CONCLUSION**

Finding Defendant Belton Technology Inc. and Defendant Yin successful on their motion to compel arbitration, the Court HEREBY COMPELS the case to arbitration pursuant to 9 U.S.C. § 206. The decision is without prejudice to Plaintiff's right to return to this Court for the limited purpose of enforcing an arbitral award.

For the foregoing reasons, IT IS HEREBY ORDERED:

1. Defendant Belton Technology Inc.'s motion to dismiss for failure to state a claim and for lack of subject-matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) is **DENIED** without prejudice, and its motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3) is **DENIED** as moot;

2. Defendant Catherine Yin's motions to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) is **DENIED** without prejudice, and her motion to dismiss for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5) is **DENIED** as moot;

3. Defendant Thomas Lee's motions to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) is **DENIED** without prejudice, and his motion to dismiss for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5) is **DENIED** as moot; and

4. Defendant Belton Technology Inc. and Defendant Yin's motion to compel arbitration is **GRANTED** pursuant to 9 U.S.C. § 206. Accordingly, the Clerk of Court is instructed to close the case.

**IT IS SO ORDERED.**

DATED: September 29, 2025

JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE

3:24-cv-01976-JAH-VET